COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-333-CR
 
  
DUNCAN 
FARWELL LEACH                                                     APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 30TH DISTRICT COURT OF WICHITA COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
 
        The 
trial court entered a judgment revoking Appellant Duncan Farwell Leach’s 
community supervision after determining that he violated condition number twenty 
of his community supervision. In three issues, Leach argues that there is no 
evidence that he violated condition number twenty; that article 42.12, section 
13B(a)(1)(B) of the Texas Code of Criminal Procedure is unconstitutionally 
vague; and that, in this case, article 42.12, section 13B(a)(1)(B) operates as 
an impermissible delegation of authority to the community supervision 
department. We will affirm in part and dismiss for lack of jurisdiction in part.
II. Factual and 
Procedural Background
        Leach 
entered a negotiated plea of guilty to the offense of indecency with a child, 
and the trial court suspended imposition of a ten-year sentence, placing Leach 
on community supervision for a period of five years. Leach met with his 
supervision officer, and the officer reviewed the terms and conditions of his 
community supervision with him. Condition number twenty of Leach’s community 
supervision conditions prohibited him from going “in, on or within 1000 feet 
of a premises where children commonly gather, including a school, school yard, 
park, day-care facility, playground, public or private youth center, public 
swimming pool, or video arcade facility.”
        Leach 
subsequently moved from Wichita Falls to Granbury in Hood County. Eddy Wininger 
assumed the responsibility as Leach’s supervision officer and read the court 
order to Leach, reviewed the terms and conditions of his community supervision 
with him, and performed a risk-needs assessment during their first meeting in 
early September 2003. Leach indicated that he understood the terms and 
conditions and did not ask Wininger any questions.
        Wininger 
received a telephone call from the Granbury Police Department on September 29, 
2003. During a meeting the next morning with Leach, Wininger asked if there had 
been any child safety zone violations. Leach responded that there had not been 
any such violations, but that he did pull into an apartment complex on Pearl 
Street in Granbury to answer his cell phone. While he was in the apartment 
complex parking lot, some children came out, and he left. Suspicious, Wininger 
went to the apartments, looked around, and spoke with a few people. Wininger 
learned that residents had observed Leach on several occasions sitting in his 
car in the apartment complex parking lot watching the children.
        A 
few days later, Wininger visited Leach’s residence and confronted him with the 
information that he had learned from his investigation at the apartment complex. 
Leach stated that he had been at the apartment complex watching children, but 
that this event occurred before he was placed on community supervision. Wininger 
reported the incident to the supervision department.
        The 
State sought to revoke Leach’s community supervision, alleging two community 
supervision violations. The trial court revoked Leach’s community supervision 
after finding that he violated condition number twenty. The trial court’s 
judgment revoking Leach’s community supervision states that “on or about 
September 29, 2003, in Hood County, Texas, the defendant [Leach] was sitting in 
his vehicle at a local apartment complex (near the mail boxes) watching the 
children in the complex.” The trial court imposed a sentence of ten years’ 
confinement.
III. Violation 
of Condition Number Twenty
        In 
his first issue, Leach argues that the trial court erred by revoking his 
community supervision because there was no evidence that he had gone within 
1,000 feet of one of the locations listed in condition number twenty of his 
community supervision. Leach contends that the term “including” in condition 
number twenty is a term of limitation and not a term of enlargement and that 
because there was no evidence that Leach went within 1,000 feet of any of the 
specific locations listed in condition number twenty, the trial court erred by 
revoking his community supervision.
        A. Standard of Review
        We 
review an order revoking community supervision under an abuse of discretion 
standard. Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); 
Jackson v. State, 645 S.W.2d 303, 305 (Tex. Crim. App. 1983). In a 
revocation proceeding, the State must prove by a preponderance of the evidence 
that the defendant violated the terms and conditions of community supervision. Cobb 
v. State, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The trial court is the 
sole judge of the credibility of the witnesses and the weight to be given their 
testimony, and we review the evidence in the light most favorable to the trial 
court’s ruling. Cardona, 665 S.W.2d at 493; Garrett v. State, 
619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); Allbright v. State, 
13 S.W.3d 817, 819 (Tex. App.—Fort Worth 2000, pet. ref’d). If the State 
fails to meet its burden of proof, the trial court abuses its discretion in 
revoking the community supervision. Cardona, 665 S.W.2d at 493-94. Proof 
by a preponderance of the evidence of any one of the alleged violations 
of the conditions of community supervision is sufficient to support a revocation 
order. Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 
1980); Sanchez v. State, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 
1980).
        B. Interpretation of Term “Including”
        Condition 
number twenty of Leach’s community supervision, which provides that Leach 
shall not “go in, on or within 1000 feet of a premises where children commonly 
gather, including a school, school yard, park, day-care facility, playground, 
public or private youth center, public swimming pool, or video arcade 
facility,” is a condition mandated by section 13B(a)(1)(B) of the Texas Code 
of Criminal Procedure when a defendant guilty of the offense of indecency with a 
child is placed on community supervision. See Tex. Code Crim. Proc. Ann. art. 42.12, 
§ 13B(a)(1)(B) (Vernon Supp. 2004-05). Leach contends that the term 
“including” as used in this statute is a term of limitation, not 
enlargement. The State asserts that the term “including” is a term of 
enlargement and argues that interpreting the term as one of limitation would 
“divest the condition . . . of any reasonable relationship to the treatment of 
the accused and the protection of the public, specifically, children.” Because 
condition twenty tracks exactly the statutory language of article 42.12, section 
13B(a)(1)(B), Leach’s argument is one of statutory construction. We therefore 
examine standard statutory interpretation and construction rules.
        Our 
primary duty when construing a statute is to determine and give effect to the 
legislative intent. See Griffith v. State, 116 S.W.3d 782, 785 (Tex. 
Crim. App. 2003). If the language of a statute is unambiguous, the court must 
seek the legislative intent as found in the plain and common meaning of the 
words and terms used. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. 
App. 1991).
        Here, 
an inquiry into the plain meaning of the term “including” is unnecessary 
because the legislature has expressly provided us with its intent concerning the 
use of the term. Section 311.005(13) of the Code Construction Act provides that 
“‘[i]ncludes’ and ‘including’ are terms of enlargement and not of 
limitation or exclusive enumeration, and use of the terms does not create a 
presumption that components not expressed are excluded.” Tex. Gov’t Code Ann. § 311.005(13) 
(Vernon 2005). Thus, the first part of section 311.005(13) clearly shows that 
the legislature intended the term “including” to be one of enlargement and not 
limitation. Id. The second part of section 311.005(13) makes it clear 
that the term does not have the effect of creating a presumption against further 
inclusion of terms not expressly stated. Id. Accordingly, the legislature 
intended the term “including” in article 42.12, section 13B(a)(1)(B) to be 
one of enlargement.
        In 
addition to legislative intent and section 311.005(13) of the Code Construction 
Act, practicality favors interpreting the term “including” as one of 
enlargement; it would be quixotic to apply a limiting interpretation to the term 
“including” considering the myriad of locations that could constitute a 
location “where children commonly gather.” Interpreting the statute to cover 
only those places expressly listed would have the effect of protecting children 
based on their location and not the fact that they are children.
        In 
support of his argument that “including” as used in article 42.12, section 
13B(a)(1)(B) is a term of limitation, Leach contends that the Board of Pardons 
and Paroles “has construed ‘including’ as a term of limitation when used 
in the context of establishing a child safety zone” under government code 
section 508.187(b)(1)(B). See Tex. 
Gov’t Code Ann. § 508.187(b)(1)(B) (Vernon 2004) (containing language 
identical to article 42.12, section 13B(a)(1)(B)). In the document cited by 
Leach, the Board uses the phrase “but not limited to” after the term 
“including” in describing a child safety zone. See Policy Bd., Tex. Bd. of Pardons and Paroles, 
Number BPP-POL.01-11.03 (Nov. 2, 2001). We cannot agree that the 
Board’s express indication that a child safety zone is not limited to the 
listed places somehow impliedly limits the statutory child safety zones to the 
listed places because the but-not-limited-to language is not included. We cannot 
agree with Leach’s contention that “the administrative agency charged with 
supervising offenders and implementing a child safety zone believed that the 
words ‘includes’ and ‘including’ are terms of limitation” because the 
definition of “child safety zone” in the document uses the phrase “but not 
limited to” after the term “including.” Accordingly, we interpret the term 
“including” as one of enlargement and not limitation. See Republic Ins. 
Co., v. Silverton Elevators Inc., 493 S.W.2d 748, 752 (Tex. 1973) (reasoning 
that it is a “well settled rule that the words ‘include,’ ‘including,’ 
and ‘shall include’ are generally employed as terms of enlargement rather 
than limitation or restriction”); Jackson Law Office, P.C. v. Chappell, 
37 S.W.3d 15, 25-26 (Tex. App.—Tyler 2000, pet. denied) (reasoning that terms 
“include” and “including” are terms of enlargement); see also Fed. 
Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 99-100, 62 S. Ct. 1, 4 (1941) 
(“We recently had occasion under other circumstances to point out that the 
term ‘including’ is not one of all embracing definition, but connotes simply 
an illustrative application of the general principle.”); Range v. United 
States, 245 B.R. 266, 279 (Bankr. S.D. Tex. 1999) (“Canons of statutory 
construction suggest that ‘includes’ broadens a statute’s reach, instead 
of limiting it.”).
        C. Sufficiency of Evidence of Condition Violation
        Leach 
does not argue that the trial court erred by revoking his community supervision 
because the evidence was insufficient to show that he violated term number 
twenty by going “in, on or within 1000 feet of a premises where children 
commonly gather.” Rather, Leach only argues that the trial court erred by 
revoking his community supervision because there was no evidence that he had 
gone within 1,000 feet of one of the locations specifically listed in condition 
number twenty of his community supervision. Having determined that the term 
“including” is a term of enlargement, we further hold that it was within the 
province of the trial court to determine if Leach violated condition number 
twenty by going “in, on or within 1,000 feet of” any “premises where 
children commonly gather.” The trial court made such a determination, and 
Leach does not contest it in any manner. Accordingly, the trial court did not 
abuse its discretion by revoking Leach’s community supervision. See Cardona, 
665 S.W.2d at 493; Jackson, 645 S.W.2d 305. We overrule Leach’s first 
issue.
IV. Grassy 
Area—“Where Children Commonly Gather”
        In 
his second issue, Leach argues that the phrase “where children commonly 
gather” in article 42.12, section 13B(a)(1)(B) is unconstitutionally vague and 
violates his due process and due course of law rights under the Federal and 
Texas Constitutions. Specifically, Leach contends that the phrase is “wholly 
incapable of meaningfully apprising any individual, and in particular, your 
Appellant, where, when, and by what means he may arrive, stay, or depart 
virtually any given location within the State of Texas.” Leach also argues 
that the statute “clearly allows for ad hoc decisions by the probation 
department, the prosecutor’s office, and finally the Court, as to whether to 
report, prosecute and convict a defendant accused of violating a child safety 
zone in any other location than that which is specifically enumerated in the 
statute.”
        When 
reviewing the constitutionality of a statute, we presume that the statute is 
valid and that the legislature did not act unreasonably or arbitrarily by 
enacting it. Rodriguez v. State, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). 
The burden is on the party challenging the statute to prove its 
unconstitutionality. Id. A statute may be unconstitutionally vague if (1) 
it fails to give a person of ordinary intelligence fair notice of the prohibited 
conduct or (2) it encourages arbitrary and discriminatory enforcement by law 
enforcement personnel. See Kolender v. Lawson, 461 U.S. 352, 357, 103 S. 
Ct. 1855, 1858 (1983); State v. Holcombe, 145 S.W.3d 246, 253 (Tex. 
App.—Fort Worth 2004, pet. granted). Requiring mathematical certainty from 
words alone is not expected. See Grayned v. City of Rockford, 408 U.S. 
104, 108-10, 92 S. Ct. 2294, 2298-2300 (1972). The vagueness doctrine “is not 
a principle designed to convert into a constitutional dilemma the practical 
difficulties in drawing criminal statutes both general enough to take into 
account a variety of human conduct and sufficiently specific to provide fair 
warning that certain kinds of conduct are prohibited.” Colten v. Kentucky, 
407 U.S. 104, 110, 92 S. Ct. 1953, 1957 (1972).
        A 
judge is required by section 13B of article 42.12 to include certain conditions 
in a defendant’s community supervision when a child was the victim of a sexual 
offense by the defendant. Tex. Code Crim. 
Proc. Ann. art. 42.12, § 13B(a)(1)(B). One of these conditions, section 
13B(a)(1)(B), prohibits the probationer from “go[ing] in, on, or within 1,000 
feet of a premises where children commonly gather, including a school, day-care 
facility, playground, public or private youth center, public swimming pool, or 
video arcade facility[.]” Id.
        Here, 
the record demonstrates that Leach understood the he was violating condition 
number twenty of his community supervision by sitting in his vehicle at the 
apartment complex watching children play. Each witness for the State testified 
that the grassy area near the apartment complex is a location where children 
play and commonly gather.[1]  The apartment 
complex does not have a playground area or a swimming pool, and the testimony 
reflected that children under the age of thirteen would regularly use the grassy 
area to gather and play.  A resident of the apartment complex called police 
to report that he had observed Leach on multiple occasions sitting in a car 
watching the children play.  Leach admitted to Wininger that, the previous 
summer, he had visited the apartment complex to watch the children. And Leach 
admitted to Wininger that he had pulled into the apartment complex on one 
occasion while he was on community supervision to answer his cell phone.  
Thus, the record shows that Leach was aware from his visits to the apartment 
complex the previous summer that children commonly gathered and played in the 
grassy area; yet, according to residents, on multiple occasions Leach pulled 
into the apartment complex and sat in his car watching the children play. 
Wininger testified that, based on his conversations with Leach, Leach understood 
that he was not permitted to be in locations where children are gathered. 
Accordingly, the record does not demonstrate, as Leach argues, that article 
42.12, section 13B(a)(1)(B) failed to give him notice of the prohibited conduct. 
Rather, the record shows that Leach understood the type of conduct prohibited by 
condition number twenty of his community supervision conditions. Furthermore, 
article 42.12 provides in its entirety extensive rules governing the community 
supervision process such that ad hoc decisions by law enforcement 
personnel are apparently obviated. See id. art. 42.12. Thus, Leach did 
not meet his burden of showing that article 42.12, section 13B(1)(a)(B) is 
unconstitutionally vague, and the trial court did not err by revoking Leach’s 
community supervision after finding that he “failed to avoid places where 
children commonly gather” in violation of condition number twenty of his 
community supervision. We overrule Leach’s second issue.
V. 
Impermissible Delegation of Judicial Authority
        In 
his third issue, Leach argues that article 42.12, section 13B(a)(1)(B) of the 
Texas Code of Criminal Procedure, the basis for condition number twenty in his 
community supervision conditions, results in the impermissible delegation of 
judicial authority in violation of his right to due process. The State maintains 
that Leach waived this issue by failing to timely appeal after he was placed on 
community supervision.
        The 
failure to timely appeal from a conviction resulting in community supervision 
waives the right to appeal. See Tex. 
Code Crim. Proc. Ann. art. 42.12, § 23(b) (Vernon Supp. 2004-05); Hoskins 
v. State, 425 S.W.2d 825, 828-29 (Tex. Crim. App. 1967) (op. on reh’g); Anthony 
v. State, 962 S.W.2d 242, 245-46 (Tex. App.—Fort Worth 1998, no pet.). 
Article 42.12, section 23(b) states,
    

The right of the defendant to appeal for a review of the conviction and 
punishment, as provided by law, shall be accorded the defendant at the time he 
is placed on community supervision. When he is notified that his community 
supervision is revoked for violation of the conditions of community supervision 
and he is called on to serve a sentence in a jail or in the institutional 
division of the Texas Department of Criminal Justice, he may appeal the 
revocation.
 
 
Tex. Code Crim. Proc. Ann. art. 42.12, 
§ 23(b).
        Here, 
Leach did not assert an appeal challenging article 42.12, section 13B(a)(1)(B) 
on improper delegation grounds after the trial court entered judgment placing 
him on community supervision. Rather, he makes this argument for the first time 
following revocation of his community supervision. Because this issue concerns 
Leach’s original conviction—not the revocation of his community 
supervision—we cannot address it. See id.; Anthony, 962 S.W.2d 
at 245-46. We dismiss Leach’s third issue for want of jurisdiction.
VI. Conclusion
        Having 
overruled all of Leach’s issues, we affirm the trial court’s judgment.
  
  
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
  
PANEL 
B:   LIVINGSTON, GARDNER, and WALKER, JJ.
 
PUBLISH
 
DELIVERED: 
June 16, 2005

 
NOTES
1.  
Brittney Storey testified as follows:
[Prosecutor]: 
Now, this grassy area in front of the apartment complex, is that a place where 
children commonly gather?
[Storey]: 
Yes.

Sheila 
Lawson testified as follows:
[Prosecutor]: 
Ms. Lawson, this grassy area that is in State’s Exhibit No. 6 in front of your 
- - the complex, in September of 2003 was that an area where children commonly 
gathered?
[Lawson]: 
Yes, sir. That is where they play.
Cari 
Davis testified as follows:
[Prosecutor]: 
All right. And in that grassy area in front of your mom’s apartment, showing 
you State’s 6, were there little kids playing in that area?
[Davis]: 
Yes, there were.
Eddy 
Wininger testified as follows:
[Prosecutor]: 
Would you say that that area in front of the complex is a place where children 
commonly gather?
[Wininger]: 
I have seen children there quite often. I would say it’s a common place for 
kids that live in that apartment complex.